not to exceed 15 minutes per side. Mr. Charles Barbieri, will you tell us your name please? Thank you. The audience seems to have lost interest in your case, Mr. Barbieri. I'm not sure that people ought to vote on anything I argue in here. In any event, I'm here today on behalf of the MDEQ defendants Prisby, Cook, Rosenthal, Bush, Schechter, Smith, and Werfel. I would reserve three minutes for rebuttal. You may. Please proceed. Our fundamental argument is that the MDEQ defendants properly removed the State Mays case on the basis of the Federal Officer Removal Statute. The District Court erred in ordering remand. The two tests that have to be applied, or that are under scrutiny in this case, were decided wrongly by the District Court. The District Court first erred in applying what is called the acting under test for Federal Officer Removal. And that test begins, as instructed by the United States were under subjection, guidance, or control of the U.S. EPA. It is our contention that there is ample support for that view, that they were under the subjection, guidance, and control of the agency. That began in 1978 when the U.S. EPA approved Michigan's Safe Drinking Water Program and gave it primary enforcement authority in the State for purposes of the Federal Safe Drinking Water Act, and its subsequent approval of each set of regulations that have followed, including the issue of the lead copper rule regulations that are at issue in this case. Tell me this, did the MDEQ approve the switch of the Flint water supply? Well, Your Honor, it was a decision actually made by Flint through its emergency manager. Did they require, did it require before it took place a firm? There was a review to determine what would be necessary if you were to take water from the Flint River. And as part of that analysis, it included a determination of what you would have to do to demonstrate optimized corrosion control. Okay. So the MDEQ was involved in that switch. Was the EPA weigh in on that switch? At that point in time, they probably did not. They probably were made aware because there are what I would call monthly communications with Flint. Right, all right. But they were communicated with. But I mean, doesn't that imply that the MDEQ actually had some authority on this, separate and apart from what the EPA did? I contend not, Your Honor, because what you're governed by in this case in terms of what the MDEQ employees were doing were the regulations that the Federal Safe Drinking Water Act imposed. So if you go and look at the Federal Safe Drinking Water regulations, including the ones that relate to lead and copper rule, it allows for two different methods to be used. That is in effect the direction and the authority that was given. So even though EPA was not directly involved, it certainly by the fact that it granted primacy and certainly by the fact that it has regulations, which it approved for the purposes of this State, was governing what could be done for showing optimized corrosion control. All right. Well, we know about this lead copper rule, but did the EPA limit how much testing the MDEQ could do? I mean, or is it just a minimum? Well, the regulations specify what testing is to be done, and that's set forth in the Federal Safe Drinking Water Act. Right. But I mean, couldn't MDEQ do more testing than the EPA required? I suppose if it found a reason to do so, yes. All right. Well, it was getting reports, wasn't it, of, hey, we got problems with... Not in the area of the lead, Your Honor. In fact, when the testing was... Well, the water was looking peculiar, was it not? And then they did respond to those complaints, which is separate and apart from what really the issues are here. We submit that the real issue here is the lead copper rule. As for those issues that you're talking about, each of those were responded to under the Safe Drinking Water Act. When you talk about odor and things of that nature, they looked into boil water advisories. They looked into the As a result of using disinfection through chlorine, there was an issue that arose through trihalomethanes, TTHMs, and all that, in terms of being regulated, was part of the Safe Drinking Water Act program that was imposed on the MDEQ and what they administered for the benefit of the U.S. EPA. Now, what do you understand under the Watson case, which I gather is sort of the Supreme Court case we've got? What is the purpose of the federal officer removal statute? Well, the policy is to prevent interference with operations, and it's also to avoid the local prejudice that defendants like my clients in enforcing federal regulations might face in a local court, and certainly to avoid an anti-federal bias. Yes, there is an anti-federal bias. We are concerned about the local prejudice in terms of administering these regulations. But you're a state people. Well, Your Honor, it's too small a description here. In actuality, it's a more complicated issue, because what they're enforcing, what they're required to enforce, and also the federal regulations. This was prescribed. All right, Michigan has its own Safe Water Act, right? Well, let's look at the context, Your Honor. In 1974, the Federal Safe Drinking Water Act was created, and it allowed for the creation of a federal state scheme. What happened? Michigan decided in 1976 to pass its own, and it's a model 1974 regulation. At that point, the MDQ, or I should say its predecessor, the Michigan Department of Public Health, applied for the primacy, which was, in fact, granted in 1978. Given the context, and given how each of these regulations have been developed and then enacted by the state itself, there's no question that there's federal involvement, and it's not simply a matter of state regulators under a state act. Can you cite me any circuit or Supreme Court decision that has allowed a state officer to invoke the federal officer removal statute? Can you cite me any appellate case? Well, Your Honor, I think maybe the closest would be, I must apologize, I'm not sure that I have a specific case. I haven't found one. I've found some where you're in the private realm, and it's been delegated to them, but I'm not sure I've found a state officer case. We would be, this is a case of first impression, is it not, then, in the country? Well, I don't think it's that hard, Your Honor. I think if you apply the tests, which I understand apply, but you can't cite me any authority where any state officer has been allowed to invoke it. I shouldn't think the precedent should make this Court fearful of applying these tests. Scared to death. Well, I assume it's also true, is it not, Mr. Barbieri, there aren't any cases where state officials have been denied federal officer removal status, either. There just aren't any cases. That's equally true. So let's go back to Watson. A couple of district court cases have said, gone both ways. Well, that's true. Certainly the Napier case, which is on appeal here, and certainly this case, which is on appeal here, Your Honor. I think Judge Watson, and so let me take a pass at that, too, because I'm interested in your opinion. If there is a defect in the district court opinion here, it seems to be that the district court believed that Watson required a finding that the federal officials actually directed the state officials' actions. I don't think you need to show... Excuse me. Could I get to the question, please? That's what the district court says, and so we look to Watson to see if that's a proper application of Watson. Watson also refers to subjection, guidance, control, an effort to assist or help carry out. So it's clear that there are lots of other things under Watson that could, conceivably, provide that somebody qualified as a federal official. So now we go to this case, and we look at your pleadings, which are primarily the notice of removal, and we look at that, and we look at only the attachments to the notice of removal, and we take that as true, just like we take the complaint as true. So when I read that, I don't really see where you're very specific about what the EPA did in the form of subjection, guidance, or control. So what's your best evidence that the state has supervision, guidance, or control, as opposed to direction of the EPA? Your Honor, briefly, number one, I don't think you have to show direct control, which I think is the inference, perhaps, from Judge Gilman's question and your Honor's question. I submit respect... I said, Mr. Barbieri, if there is an error in the district court opinion, it's that it seems to require there to be a showing of direction. And my point was, Watson goes well beyond direction to allow somebody to at least invoke a federal official status. So I don't want you to talk about direction. What else is there that you rely upon besides direction? Because I don't find that they directed you to do anything relative to the lead and copper water rule. I would argue they did, if you had to go that far. But let me just respond directly to your question. The whole process of how they got into the position to perform the tasks they were doing was as a result of delegation. It occurred behind the 1974 Act. It occurred by the fact that Michigan passed its own statute in 1976. It occurred as a result of the primacy being approved. And with each set of regulations, each set of regulations have to be re-approved and primacy re-established. And that has, in fact, been done over the years by the Michigan Department. But delegation doesn't ipso facto mean that there was direction, supervision, or monitoring. As Judge Gilman argued, or asked you, you can set forth a standard, but that doesn't mean that that's the only way it can be done. That can be a minimum and the state can go beyond that. In terms of the federal regulations, they tell you what you're going to be able to do in terms of optimization. There are two options. Those are spelled out by the federal regulation. You can do it by monitoring. It's two six-month rounds of testing, which was, in fact, employed in this case. Or you could opt to go to corrosion control, which would have, some type of treatment, which would have required a study. What I'm trying to figure out is, under the lead and water rule, it says those are things that you can do, which presumably brings you in compliance with federal law. But as Judge Gilman asked you, is there anything in there that says you, that the state official can't do more? Your Honor, I suspect in that premise, they couldn't do any less. That's absolutely certain. We got that. But could they do more? If the circumstances justify it. And the reason that I'm asking you that is I think that when I pose this question to Mr. Goodman, he's going to say that the whole underlying tort claim here is the failure to do more. I don't know that, but I'm guessing that's what he's going to say. So if the regulations preclude you from doing more, then it seems to me that undercuts his theory. But if it sets a floor and they can do more, then why are they federal officials for failing to do more? What would be the basis for doing more? What our clients did was in compliance with the federal state drinking regulation. Well, he gets to answer that. I don't know what he's going to say. In terms of what they have argued here, Your Honor, they've argued three things. So anyway, the specific question is, does the regulation say you have to do it this way, in which case, good argument for direction, or does it say you've got these options but doesn't preclude you from doing more? In terms of what you had to do for optimized corrosion control, you only had two choices, Your Honor, and that was by the regulation. And you can't do anything more? You can't do anything more. Okay. That answers my question. That's my position. Do you have anything else? And maybe it would be helpful when you come back if you could just give me the site within the lead and water rule. I don't know how many pages this is, but it's a lot. Thank you. I will, Your Honor. Thank you. Good morning, Your Honor. Bill Goodman and Perry on behalf of the plaintiffs at Belize in this case. And I guess I should start by answering Judge McKeek's question, which is absolutely we contend they could, should do more and fail to do so, not based upon any of their own knowledge of what was wrong with the original switch. You keep saying that this is a simple garden variety state tort action. Now, unless I'm missing something, the source of the duty, the breach of which could constitute a tort, has to come from either state statute or state common law, right? Right. In this case, it comes from both. So here, you're saying that the tort of not doing more than what the federal regulations require is a violation of the Michigan Safe Drinking Water Act, right? Yes. Could you just simply tell me where do I find that duty in the Safe Water Drinking Act to do more than what the federal law says? I want to leave aside the Michigan Safe Drinking Water Act. I think that that requires them to do a series of tests and a series of determinations as to the toxicity of this water. But they knew, and we've alleged that they knew, already that these were, that this was toxic, a toxic substance, and they didn't need to do the testing. They already knew it. And the source of that responsibility is common law, gross negligence under common law in Michigan? Okay. Do we have, do we, I don't find that you cite any Michigan law cases that set forth the duty of these federal officials in any kind of analogous situation. So what Michigan law cases to establish the common law should we look at? State public law officials. Are you asking me about state public officials or federal officials? I asked you the source of the state tort here. And you first said it was the statute and the common law. And then you said, well, let's forget the statute for a minute. So what case, what Michigan state court case are you relying upon to establish the duty here that you claim they breached? When I said there's a statutory duty, Your Honor, just to be clear, I did not mean the Michigan Safe Drinking Water Act. I meant the Michigan governmental immunity statute, which says that there is immunity for simple negligence, but that there is continued liability for common law gross negligence as to public officials. Okay. So where do I find a case that spells out what common law gross negligence encompasses in, and is it in any way analogous to what you claim these folks did or failed to do? I take heart and note of the Court's basic implicit criticism of failure to cite similar cases or authority to say that this constitutes gross negligence. However, the situation that occurred with regard to the essentially poisoning of an entire community in Flint is so unusual, indeed, unique, that I don't think that we're going to find any cases that are right on point with regard to that responsibility of public officials. So, in other words, this state garden variety tort is not one that you can find its basis in either the Michigan Safe Water Drinking Act or Michigan common law duty cases? Well, clearly, if someone engages in outrageous behavior that recklessly causes injury to Michigan gross negligence under Michigan law, and I can find many cases. Let me tell you why I'm asking so there's no mystery here. If there's an easy source that you can point to, to the state common law duty that was breached, then that's very persuasive as to this is a state case and it should stay in state court. But if you can't point to any sort of statute or case, then that's at least somewhat supportive of the other side's argument that this is really all about the federal statute and the lead and copper rule. The situation, Your Honor, if I may analogize, is not dissimilar to a situation where, let us say, a police officer, in the course of exercising his law enforcement responsibilities or her law enforcement responsibilities, overreacts and engages in some form of gross negligence, beats up a prisoner, does something along those lines. This is what happened with these particular defendants in this case. They knew the water was poisonous and it wasn't that they failed to act, they did fail to act, but it was that they affirmatively and proactively approved the change of water to a source that, as I said, they knew to be dangerous and poisonous. And it wasn't only under the lead and copper rule, Your Honor. There are other contaminants as well. The failure to provide the necessary protections in this case let loose a whole series of other contaminants that are not covered by the lead and copper rule, including Legionella, which resulted in a number of deaths in this situation. So while we can't point to a case that's factually analogous to what these particular public officials did, it is, I think, I hate to use the term, but of course it was used by the lower court in this case, it is a garden variety tort. It is gross negligence. And it is covered by statute, which is the Michigan Governmental Immunity Act, as well as common law. So if Mr. Barbieri is right, that the lead and copper water, or the lead and copper rule, says you've got a couple of choices, and presumably you have to do one or the other. One of them was monitor for six months, see what the result is, monitor for another six months and see what the result is. Could you speak to, it just seems a little incongruous to have somebody following a federal rule that then is held liable in state court for state court negligence, or gross negligence as you're saying it, for not going beyond that rule. So do we have, could you speak to that and whether there are any cases that address that? I'd be happy to. They didn't need to test. They knew it already. The testing is a protocol that whereby these officials educate themselves as to the toxicity of a particular water source. They had that knowledge already. It was in their heads. And therefore the fact that the lead and copper rule may say here's a way you can figure out whether water is toxic, is going to be toxic, this is a testing protocol that will work, is irrelevant to the plaintiff. Here's why I'm wondering if it's irrelevant. What it seemed to be from reading this is that before you take the affirmative action of sticking additional chemicals in the water, i.e. corrosion control, you've got to have test results that justify putting that stuff in the water. You seem to say, gee, the water was stinky and it smelled, there seems to be no dispute about that, therefore they knew there was too high lead levels, so therefore they should have ordered corrosion control when the federal system seems to be, for better or for worse, wait a while to see what happens. No. So that's wrong? Yes, with all due respect. Number one, it wasn't simply that the water was smelly and inky and had foul tasting. It was that years before the switch was made, the city of Flint did a study that said if you use the water from the Flint River, it's going to have huge corrosion possibilities or likelihood, and this was a red flag. This was a warning that the city of Flint knew and that the MDEQ officials knew as well. And beyond that... So the MDEQ officials were provided with that study before it was taken? Yes, that's right. And beyond that, Your Honor, it was not simply... Anyway, I'm sorry, I lost the train of your other area of confusion, but I... That's all right. You answered my question. Thank you. Okay. I don't know whether we should talk about the other basis for removal, the 1441 removal. I know that the Court did call for supplemental briefing on the artful pleading exception, and that, I think, relates to the issue of whether there's a substantial Federal issue involved here. I might point out, and I believe that we did point out in our briefing, that to allow removal here based upon Section 1441 will set forth a whole series of... What's the phrase that was used in Grable and in Franchise Tax? A mess, basically, is what it boils down to. That not only will it allow for removal in this particular situation, but as this Court knows, there's a whole raft of other cases, including criminal cases, that will then be subject to removal, as will all of the other defendants in our case who did not remove. It's only the MDQ... There's no removal of criminal cases, so that's not an issue. And interestingly enough, and I'm not saying whether you're right or wrong on this, but Watson says that to construe the Federal official removal statute liberally, not narrowly. Right? Yes, I agree. So, but I'm now... Watson deals with the Federal official removal. I was talking about substantial Federal question removal, but that's fair enough here. What is your thought about this recent case of Bowler v. Early, you know, the Sixth Circuit? Yes, I'm well aware of that case. Does that have any effect on our... Technically, it's Bowler and Mays v. Early, and that was our case as well. And there, several days ago, a companion panel to this one from this circuit ruled that the issues that are articulated in the Federal complaint, this is a removal of a State court pleading, but in the Federal complaint under the Federal Civil Rights Act, Section 1983, are not preempted by the Safe Drinking Water Act in any way. There was no intent under the Safe Drinking Water Act to do so. No preemption of constitutional claims. That's right. No preemption of constitutional claims. What do we make, if anything, of... We put you to the task of this big, huge chart, which is shocking. So we appreciate you doing that. It couldn't have been easy. Is there any significance whatsoever to the fact that it seems like the vast majority of these claims, one way or the other, are now all pending in Federal court, and some are pending in State court? Am I wrong about that? Yes, in State court, in the Michigan Court of Claims, and in the Michigan Court of Appeals. And Judge Levy has acted to consolidate all of the Federal cases in one case. That's correct, Your Honor. So does it... I'm not sure this is relevant, but it just seems sort of odd that this case involving exactly the same acts of the State officials would be tried in State court when everything else is being tried in Federal court. I think that that's a fair point. I might point out that this kind of removal is judged based upon the pleadings alone. The other factors that you're pointing out are sensible. In this case, the defendants have... I mean, the plaintiffs have chosen to initially file in State court, and we believe that the basis for removal is fallacious, and therefore we oppose it. But the point that you're making, there is some sensible thinking in that as well, and I don't... But you're wedded to getting this remanded back, even in light of everything that's happened in both venues since this dispute came up. Wedded is a strong word, Your Honor. I'm wedded to the Federal law being properly and correctly interpreted by this panel, and therefore that's our position is what it is and has been throughout. Well, we're part of limited jurisdiction. We kind of got to follow that. I agree. But this case has now been subsequently removed a second time, right? And that issue is in dispute. Yes, that's before Judge Levy at this point. There's another removal that is... Of the same case. Of the same case, that's right. I would just like to point... And you're opposing that removal also. We will be filing papers on that. I'm not responsible for that part of the... Well, if you said you were going to acquiesce in that removal, it makes this case, makes these claims... No, we're not going to acquiesce. I can say that. Let me just add a couple of points that have not been made. I think that it's important to keep in mind that the Safe Drinking Water Act does have a powerful savings clause that allows for the rectification of wrongs that have occurred under state common law and state statutory law, and this is a part of the Federal statute and should be a part of this Court's consideration. And finally, what was referred to as primacy is primary, the word is primary enforcement responsibility by state officials, and that only kicks in once the State of Michigan passes its own Safe Drinking Water Act, which, as was pointed out by counsel, has happened in this case. And in that instance, then, they are not acting as Federal officials, they're acting as those with primary responsibility given by the statute to the State of Michigan in this instance. Thank you very much for your attention, gentlemen. Thank you. Mr. Barbieri? Your Honor, let me first respond to the challenge you had in terms of what regulation should be consulted. I would urge the Court to look at 40 CFR Sections 141.81 and 141.82. And in fact, we discuss that at pages 46 through 48 of our brief, and specifically, we quoted a portion of that which sets forth the option that was, in fact, invoked in this case in terms of proving optimized corrosion control. All right. Thank you. All right. Turning to the issue raised during the plaintiff's argument, that this is like a garden variety State tort claim, I think he struggled to make that suggestion here. And I think the reasons of struggle is when you look at what this whole case is tied to, it's tied to whether corrosion treatment is required, and that's tied to whether the lead copper rule allows for six-month rounds of residential tap testing. The issue of whether pre-flushing occurred, which is tied, again, to Federal testing requirements, and for purposes of that one, Your Honor, if you wanted to look at that, that's at 40 CFR 141.86. It also involves the issue of when warnings and notices are to be given. And that's only in certain circumstances when certain levels are exceeded. And for the initial rounds of sampling that occurred, there was no requirement beyond those that were sent to Flint as to what needed to be sent to specific persons who were part of that. In the first instance, there was a 6 percent. In the second instance, there was 11 percent, where the results were higher than the practical quantitation limit, which is different than the action level. And those notices were given, Your Honor. And from that, they want to imply or suggest that we were grossly negligent. I don't know how you could be grossly negligent in applying the regulation as it set forth. Mr. Chairman, I understand Flint was grossly negligent in approving the switch of the water because there had been a prior study before the switch that there were lots of toxins in the Flint River. Well, it was a very generic study, Your Honor, if one wanted to review it without telling you what it had to do with whether it would be corrosive for lead. And quite frankly, our clients did look at sampling before that switch was made. They look at pH, they look at all the telltales that you would have corrosion occurring. In fact, it's going to be our contention in this case that corrosion has very little to do with how lead came about. There's a significant portion of this case that may turn whether it was particulate lead, which has nothing to do with whether you use corrosion control. So Your Honor... Well, then the next step after that, that Mr. Goodwin didn't mention, is the GM plant in Flint stops using Flint water as well because it's corroding the parts and it's corroding the machinery. Which has nothing to do with whether it corrodes pipes. Their sensitive parts had a different threshold, which is not what is guided under the Safe Drinking Water Act. It is a little strange to say people should be drinking water that's not suitable to wash an engine with. You're looking at chlorides in that instance, Your Honor, and that's what the General Motors issue is. The issue of whether you have corrosion in the pipes is really tied to pHs and calcium and those alkalinity and those factors, which has nothing to do with the chloride issue. It's a very complicated argument. That's why it requires a federal court to review. Thank you, Your Honor. All right. Thank you, counsel. Complicated seems to me to be an understatement. This was a law school final examination question, if one was really Machiavellian, I suppose. So this is an important matter, obviously. We will take it under consideration. Thank you both very much for your excellent briefs and arguments. Thank you, Your Honor.